ORIGINAL

FILED IN CLERK'S OFFICE
D.C.

MAY 1 4 2004

LUTHER D. [signature], Clerk
By: [signature] Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. ROBERT J. ALLEN, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action File No. ) 1:01-CV-0854-MHS |
| PHYSICIAN SPECIALISTS IN ANESTHESIA, P.C., et al., | ) ) ) |
| Defendants. | ) |

**DEFENDANTS THE RESURGENS CENTER, INC., RESURGENS AND
AFFILIATED ORTHOPAEDISTS, P.C., AND RESURGENS SURGERY
CENTER, LLC'S MOTION TO DISMISS**

The Resurgens Center, Inc., Resurgens and Affiliated Orthopaedists, P.C., and Resurgens Surgery Center, LLC ("the Resurgens Defendants"), Defendants in the above-styled civil action respectfully request that this Court dismiss the relator's Second Amendment of Complaint by Restatement ("Second Amended Complaint") pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted.

Specifically, as discussed in detail in the accompanying "Brief in Support of Motion to Dismiss," the Second Amended Complaint must be dismissed for several reasons. First, it is clear from the paucity of facts alleged in the Second

44

Amended Complaint pertaining to the Resurgens Defendants that the relator cannot, as required by Fed. R. Civ. P. 9(b) ("Rule 9(b)"), plead fraud with particularity against them. Second, the relator's additional claims based on common law conspiracy to defraud, the Anti-Kickback Act ("AKA"), and the STARK Act must also be dismissed because the relator lacks standing to bring such claims. In addition, the conspiracy claims under the FCA must be dismissed because they are improperly pled and are barred by the applicable statute of limitations. Finally, the relator's claims based upon the AKA and the STARK Act must be dismissed on yet another ground – the inapplicability of the statutes relied upon.

For the foregoing reasons, the Resurgens Defendants, therefore, respectfully request that this Court grant their Motion to Dismiss the Second Amended Complaint with prejudice, in its entirety.

Respectfully submitted, this 14th day of May, 2004.

Charles C. Murphy, Jr.
Georgia Bar No. 530062
Ellen G. Schlossberg
Georgia Bar No. 629387
Lara Cullinane-Smith
Georgia Bar No. 200515

VAUGHAN & MURPHY
260 Peachtree Street, NW
Suite 1600
Atlanta, GA  30303
(404) 577-6550 (Phone)
(404) 577-0060 (Facsimile)

Counsel for Defendants Resurgens Center, Inc., Resurgens and Affiliated
Orthopaedists, P.C., and Resurgens Surgery Center, LLC

## CERTIFICATE OF SERVICE

This is to certify that I have this day served the foregoing **DEFENDANTS THE RESURGENS CENTER, INC., RESURGENS AND AFFILIATED ORTHOPAEDISTS, P.C., AND RESURGENS SURGERY CENTER, LLC'S MOTION TO DISMISS** upon the parties by causing copies of same to be deposited into First Class Mail, with postage prepaid, properly addressed to:

> Marlan B. Wilbanks
> Harmon, Smith, Bridges & Wilbanks LLP
> 1795 Peachtree Road, N.E.
> Suite 350
> Atlanta, Georgia 30309-2339
>
> Shannon T. Klinger
> George A. Koenig
> Alston & Bird LLP
> One Atlantic Center
> 1201 West Peachtree Street
> Atlanta, Georgia 30309
>
> Paul J. Quiner
> 2840 Mt. Wilkinson Parkway
> Atlanta, Georgia 30339

Respectfully submitted, this ___ day of May, 2004.

_____
Lara Cullinane-Smith
Georgia Bar No. 200515



FILED IN CLERK'S OFFICE
. . . . . Atlanta

MAY 1 4 2004

LUTHER D. THOMAS, Clerk
By: _____
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA      )
ex rel. ROBERT J. ALLEN,      )
                              )
        Plaintiff,            )
                              )
v.                            ) Civil Action File No.
                              ) 1:01-CV-0854-MHS
PHYSICIAN SPECIALISTS IN      )
ANESTHESIA, P.C., et al.,     )
                              )
        Defendants.           )

## BRIEF IN SUPPORT OF MOTION TO DISMISS

The Resurgens Center, Inc., Resurgens and Affiliated Orthopaedists, P.C., and Resurgens Surgery Center, LLC ("the Resurgens Defendants"), Defendants in the above-styled civil action, file this brief in support of their motion to dismiss.

## I.    INTRODUCTION

The Resurgens Defendants have moved this Court to dismiss all claims in the relator's Second Amendment of Complaint by Restatement ("Second Amended Complaint") pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted.

With respect to the False Claims Act allegations, the Second Amended Complaint fails to differentiate between any of the named defendants and does not allege improper acts on the part of any individual employees. There is also no

allegation that any of the Resurgens Defendants submitted any claims, let alone false claims, for payment to the United States. Nor is there any allegation that any of the Resurgens Defendants caused anyone else to submit false claims – indeed, not a single false claim is identified. Further, no specific time during which any alleged submissions were made is identified, with the result that the relator cannot plead fraud with the requisite degree of particularity, as is required by Fed. R. Civ. P. 9(b) ("Rule 9(b)").

Additionally, the Second Amended Complaint lacks similar required specificity regarding the conspiracy claims, and is totally devoid of specific facts informing these corporate defendants of the "who, what, where, when and how" of their allegedly fraudulent and conspiratorial conduct.

Finally, the relator's additional claims based on common law conspiracy to defraud, the Anti-Kickback Act ("AKA"), and the STARK Act must also be dismissed because the relator lacks standing to bring such claims. In addition, the conspiracy claims under the FCA must be dismissed because they are improperly pled and are barred by the applicable statute of limitations. Furthermore, the relator's AKA and STARK Act claims are subject to dismissal on yet another ground – the inapplicability of the statutes relied upon.

## II.   **ARGUMENT**

This Court should dismiss the Second Amended Complaint pursuant to Fed. R.

2

Civ. P. 12(b)(6) because the facts alleged, even if taken as true, do not state a claim entitling plaintiff to any relief. *See Conley v. Gibson*, 355 U.S. 41, 46-47 (1957); *75 Acres, LLC v. Miami-Dade County, Florida*, 338 F.3d 1288, 1293 (11th Cir. 2003).

**A.  The Second Amended Complaint Fails to Plead a Proper Cause of Action Under the False Claims Act.**

A dismissal of the Civil False Claims Act, 31 U.S.C. § 3129, *et seq.*, ("FCA") allegations against the Resurgens Defendants is warranted because there are no substantive allegations against them in the Second Amended Complaint that would constitute violations of the FCA, nor is there anything in the Second Amended Complaint upon which one could infer the existence of such violations by them. *See Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979). Despite having had more than two years and three chances to fashion a complaint that complies with the requirements of Rules 9(b) and 12(b)(6), the relator's latest and, presumably, final effort falls woefully short of informing any of the Resurgens Defendants of what supposedly fraudulent acts they are alleged to have committed, who supposedly committed those unspecified acts, and when the unidentified actors supposedly engaged in the unidentified conduct.

It is well-established that FCA complaints are subject to the stringent pleading requirements of Rule 9(b). *United States ex rel. Karvelas v. Melrose-Wakefield Hospital*, 360 F.2d 220 (1st Cir. 2004); *United States ex rel. Clausen v. Laboratory*

*Corp. of America*, 290 F.3d 1301, 1308-09 (11th Cir. 2002); *United States ex rel.*

*Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997);

*United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981), *cert.*

*denied*, 405 U.S. 999 (1982).  Acknowledging the potentially harsh punitive punch of

the Act, cases have cautioned that courts "must be particularly attentive to the

heightened pleading requirement in a case brought under the False Claims Act because

it carries heavy penal consequences . . ." *United States v. Cheng,* 184 F.R.D. 399, 401

(D.N.M. 1998).  Thus, "the pleader must state the time, place and content of the false

misrepresentations, the fact misrepresented and what was obtained or given up as a

consequence of the fraud." *Cannon*, 642 F.2d at 1385; *see also United States ex rel.*

*Russell v. Epic Healthcare Management Group*, 193 F.3d 304, 308 (5th Cir. 1999).

In *United States ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 198

F.R.D. 560 (N.D. Ga. 2000) (*Clausen I*), and *United States ex rel. Clausen v.*

*Laboratory Corp. of America, Inc.*, 290 F.3d 1301 (11th Cir. 2002) (*Clausen II*), this

Court (in a decision by Judge Thrash), and later the Eleventh Circuit, considered

whether a relator had stated FCA claims in a manner sufficient to satisfy the heightened

pleading requirements of Rule 9(b).  In both cases, the courts found that the relator had

not satisfied this burden, even when, in *Clausen II*, he had been given a chance to

amend his complaint consistent with the decision in *Clausen I.*

In *Clausen I*, Judge Thrash first noted that for a complaint under the FCA to

4

comply with Rule 9(b), it must "present[] in detail the 'who, what, when, where and how' of the alleged fraud." *Id.* (Internal citations omitted). Judge Thrash stated that "[t]his heightened pleading requirement serves to inform defendants of the 'precise misconduct with which they are charged and protect[] defendants against spurious charges of immoral and fraudulent behavior.'" 198 F.R.D. at 562 (internal citations omitted). The Court went on to observe that Rule 9(b)'s "clear intent is to eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed." *Id.* In the case at bar, as in *Clausen I*, the relator has failed to state the allegations of fraud with the requisite degree of specificity, and must not be allowed to subject the Resurgens Defendants to "unfounded accusations of immoral and otherwise wrongful conduct." *Id.*

Because fraud claims have the potential for greatly harming the reputation of those accused of the offense – here, venerable and highly respected orthopedic surgeons in this community – the claims must be "responsible and supported, rather than defamatory and extortionate." *See Ackerman v. Northwest Mutual Life Ins.*, 172 F.3d 467, 469 (7th Cir. 1999). In this case, the Second Amended Complaint does not even come close to satisfying that burden.

1.   <u>The FCA Claim Must Fail Because It Does Not Properly Identify the Alleged Wrongful Actors.</u>

The relator's most egregious failure to satisfy the requirements of Rule 9(b)

5

arises from his inability to distinguish between the various corporate defendants and to identify specifically those persons within those organizations he claims to have acted fraudulently.

> a.   The Second Amended Complaint fails to distinguish the particular actions of the corporate defendants.

The relator attempts to circumvent the pleading requirements of Rule 9(b) by making generalized allegations against "Defendants," or various groups of Defendants. (*See* Second Amended Complaint, ¶¶ 45-46, 48, 50, 53-54, 69-70, 72-75, 79-81, 84-87). In fraud cases involving multiple defendants, however, plaintiffs <u>must</u> allege the specific acts of fraud committed by particular defendants, rather than, as here, impermissibly grouping the defendants. "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2nd Cir. 1987); *see also Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994) (when accusing multiple defendants of fraud, plaintiff "must take care to identify which of them was responsible for the individual acts of fraud"); *Center Cadillac, Inc. v. Bank Leumi Trust Co. of New York*, 808 F. Supp. 213, 230 (S.D.N.Y. 1992) ("General allegations that defendants 'conspired' in alleged scheme to defraud do not sufficiently attribute fraud to each individual defendant and do not satisfy requirements of pleading fraud with particularity.");

*Balabanos v. North American Investment Group, Ltd.*, 708 F. Supp. 1488, 1493 (N.D. Ill. 1988) (in cases with multiple defendants, "the complaint should inform each defendant of the specific fraudulent acts that constitute the basis of the action against the <u>particular</u> defendant")(emphasis added).

The only mentions of the individual Resurgens Defendants are found in paragraphs 9 through 12 of the 44 page Second Amended Complaint. After this point, the individual companies are collectively referred to "the Defendant Resurgens," or, at times, simply "Defendants." Plaintiff's use of these vague terms creates confusion and sheds no light on the essential issue of which individual Defendant is alleged to have committed which act. With the numerous party defendants in this case, it is impossible to discern from the Second Amended Complaint which "defendants" engaged in alleged misconduct, and under such circumstances, dismissal is warranted. *See Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990)(affirming dismissal <u>with prejudice</u> because "the complainant lump[ed] all the defendants together and [did] not specify who was involved in what activity"); *United States ex rel. Dahwan v. New York City Health and Hospital Corp.*, 2000 U.S. Dist. Lexis 15677 at *7-8 (S.D.N.Y. October 24, 2000)(court dismissed claims where the complaint failed to allege particular fraud for each); *Breeden v. Richmond Community College*, 171 F.R.D. 189, 198 (M.D.N.C. 1997) (fraud complaint inadequate under 9(b) where plaintiff described the fraud in terms of "defendants" or "they").

7

     b.    The Second Amended Complaint also fails to identify the employees of the Resurgens Defendants who allegedly engaged in wrongful conduct.

Courts have also refused to allow FCA claims to proceed when the complaint did not specify which employees of the defendants engaged in the alleged fraud, or the role of such employees. *United States ex rel. Brahan v. Mercy Health System,* 1999 U.S. App. LEXIS 18509 at *8 (6th Cir. Aug. 5, 1999) (dismissal upheld where the complaint contained "generalized accusations of wrongdoing attributed to 'defendants' without any specificity as to which employees of the defendants were engaged in the alleged fraudulent scheme"); *United States ex rel. Robinson v. Northrop Corp.,* 149 F.R.D. 142, 145 (N.D. Ill. 1993) ("the identity and/or role of the individual employee involved in the alleged fraud must be specified in the complaint"); *see also Karvelas,* 360 F.3d at 233-34.

Here, the Second Amended Complaint does not identify by name even a single employee of any Resurgens Defendant that it alleges participated in the fraudulent scheme. The relator cannot maintain a FCA suit against the Resurgens Defendants where he simply claims, as he does, that unnamed persons at some unidentified Resurgens entity, during undefined times, committed unspecified acts. *Robinson,* 149 F.R.D. at 146; *see also United States ex rel. Lee v. SmithKline Beecham, Inc.,* 245 F.3d 1045 (9th Cir. 2001) (affirming dismissal of complaint based, in part, upon plaintiff's failure to name defendant employees involved in the scheme to submit false claims);

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 789 (4th Cir. 1999) (dismissing the allegations because the plaintiff did "not state which signature was fraudulent or unauthorized, <u>nor who perpetrated the fraud</u>, nor how the signature was fraudulent.") (emphasis added); *United States ex rel. Butler v. Magellan Health Services, Inc.*, 74 F. Supp. 2d 1201, 1216-17 (M.D. Fla. 1999); *United States ex rel. Vallejo v. Investronica, Inc.*, 2 F. Supp. 2d 330 (W.D.N.Y. 1998) (dismissing complaint because plaintiff failed to identify defendant's employees responsible for making false statements); *United States ex rel. DeCarlo v. Kiewit/AFC Enterprises, Inc.*, 937 F. Supp. 1039, 1051 (S.D.N.Y. 1996) (complaint dismissed under Rule 9(b) for failure to identify specific employees who submitted allegedly false claims). In this case, it is insufficient simply to identify the type of alleged wrongful claims made. Rather, the relator must describe, <u>with particularity</u>, the actual wrongful activity constituting the fraud, and by whom it was committed, among other things. This he has completely failed to do.

      2.    <u>The Relator Fails to Set Forth Specific Information About the Submission of False Claims.</u>

          a.    Relator's claims must fail because he cannot identify any submission of false claims to the government.

In *Clausen I*, this Court found that while the relator had set forth detailed information about the alleged schemes carried out by the defendant, he had only alleged

9

in a conclusory manner that those alleged practices had resulted in the submission of

false claims.  198 F.R.D. at 563.  Judge Thrash found this insufficient because:

> Plaintiff has <u>failed to identify a single claim that was actually submitted pursuant to the allegedly fraudulent schemes</u> identified in the Amended Complaint. Essentially, Plaintiff has set out the process by which Defendants could have produced false claims, but provides no facts that this process did in fact result in the *submission* of false claims.

*Id.*  (Underlining added, italics in original).

    *Clausen II* found that that the Amended Complaint still contained the same

procedural defect even after amendment:

> The False Claims Act does not create liability merely for a health care provider's disregard of Government regulations or improper internal policies unless, as a result of such acts, the provider knowingly asks the Government to pay amounts it does not owe. . . .  Without the *presentment* of such a claim, while the practices of an entity that provides services to the Government may be unwise or improper, there is simply no actionable damage to the public fisc as required under the False Claims Act. . . .  The submission of a claim is thus not, as Clausen argued, a "ministerial act," but the *sine qua non* of a False Claims Act violation.

290 F.3d at 1311 (internal citations omitted) (emphasis in original).  The Eleventh

Circuit found that "Clausen's failure to allege with any specificity if – or when – any

actual improper claims were submitted to the Government [was] indeed fatal to his

complaints . . ."  290 F.3d at 1312.

    Likewise, in the case at bar, the relator has failed to identify any specific claims

supposedly submitted to the government by any defendant, much less any Resurgens

Defendant.  Instead, as in both *Clausen* cases, the relator simply sets out a process by

10

which he alleges false claims were made, concluding that "bills and facility fee claims were falsified." (Second Amended Complaint, ¶¶ 45, 46, 69). The relator fails, however, to identify any actual claim where such alleged falsification took place, and instead relies on conclusory allegations that such claims must have been falsified. (Second Amended Complaint, ¶¶ 71-82). As was true in *Karvelas*:

> the complaint never specifies the dates or content of any particular false or fraudulent claim allegedly submitted for reimbursement by Medicare or Medicaid. It provides no identification numbers or amounts charged in individual claims for specific tests, supplies, or services. It does not identify or describe the individuals involved in the improper billing or allege with particularity any certification of compliance with federal regulations in order to obtain payments.

*Karvelas*, 360 F.3d at 233. Such a failure to allege the submission of particular false claims is fatal here, just as it was in *Clausen I* and *Clausen II*.[1]

> b.   Relator fails to show a connection between any Resurgens Defendant and any false claim actually submitted.

---

[1] The present case is distinguishable from *Hill v. Morehouse Medical Assoc., Inc.*, 2003 WL 22019936 (11th Cir. Aug. 15, 2003), in which the court allowed a case to proceed even though the relator did not identify the patients' names or the exact date upon which particular claims were submitted. In that case, the relator worked in the department, observed the fraud, identified the actual employees engaged in the fraud, and described with particularity not only the fraudulent codes used, but the forms used, and the exact frequency of the fraud. Moreover, because she was an employee she was found to have an "indicia of reliability" sufficient to allow her complaint to pass muster without the patient names. *Id.*, at * 5. In the present case, the relator was not employed by the Resurgens Defendants and provides none of the particularity found in the *Hill* complaint. The *Hill* court, however, was quick to point out that if her claims had been based on mere speculation, as is the case here, they would not have satisfied Rule 9(b).

Even if the Court were to disregard the Amended Complaint's utter lack of specificity, the claims against the Resurgens Defendants would still be subject to dismissal because the relator has failed to allege any action on the part of any Resurgens Defendant showing that it submitted, or caused to be submitted, even a single false claim.  It is not enough for a defendant simply to be alleged to have been aware of fraud and it is questionable that even that claim is made here.  Rather, under 31 U.S.C. §§ 3729(a)(1) and (a)(2), the defendant must take "some action."  *United States ex rel. Piacentile v. Wolk*, Civ. No. 93-5773, 1995 WL 20833 at *4 (E.D. Pa. Jan. 7, 1995) ("The government's argument that defendant [owner/officer] was aware of the fraud does not eliminate the need for some action by the defendant whereby the claim is presented or caused to be presented.").

As the First Circuit stated in *Karvelas*:

> Not all fraudulent conduct gives rise to liability under the FCA.  "'[T]he statute attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the 'claim for payment.'"

*Karvelas*, 360 F.3d at 225 (internal citations omitted); *see also United States v. ex rel. Totten v. Bombardier Corp. and Envirovac, Inc.,* 286 F.3d 542, 551 (D.C. Cir. 2002) (affirming dismissal of FCA allegations where there was no causal link between the alleged malfeasance by the defendants and a claim for payment to the government); *Kowal v. MCI Comm. Corp.,* 16 F.3d 1271, 1279 (D.C. Cir. 1994) (affirming dismissal of complaint under Rule 9(b) for failure to plead allegations demonstrating that actions

12

undertaken by defendant constituted fraud).  In the instant case, the absence of factual allegations demonstrating the necessary connection between the Resurgens Defendants and any alleged submission of a claim for payment is fatal to the FCA claims.

In fact, the Second Amended Complaint does not contain any allegations that any of the Resurgens Defendants submitted a false claim, or caused a false claim to be submitted.  The Second Amended Complaint does not indicate any particular act committed by any individual Resurgens Defendant which would constitute wrongful conduct.  Indeed, in the Second Amended Complaint, the relator basically admits that the Resurgens Defendants could have had nothing to do with the submission of any claims, because the Second Amended Complaint consistently asserts that all false claims (none of which are ever particularly identified), were submitted by defendants PSA and PSPM, or their billing agents, rather than the Resurgens Defendants.  (Second Amended Complaint ¶ 46(a)).

Rather than alleging the facts required to satisfy Rule 9's heightened pleading requirements, the relator instead asks both the Resurgens Defendants and the Court to draw an inference of fraudulent conduct on the part of all Resurgens Defendants based upon the existence of agreements between one Resurgens Defendant, on the one hand, and two anesthesia defendants, on the other, that covered the provision of anesthesia

services and billing services by the latter, and the rental of office space by the former. [2]

These "facts" appear to be the only basis by which the relator has even attempted to tie

<u>any</u> Resurgens defendant to <u>any</u> alleged malfeasance, but we are never told precisely

how. Such a tenuous link is insufficient, however, to satisfy the requirements under

Rule 9(b). When accompanied by the fact that the relator has failed to specify any

claims submitted, it is clear that, at least with respect to the Resurgens Defendants, the

relator has not shown the required specificity, with the result that the claims against

them must be dismissed.

3.    The Second Amended Complaint Is Deficient Because It Also Fails
      To Allege the Time At Which Any Allegedly Fraudulent Claim Was
      Submitted.

In *Clausen I*, this Court also found that the plaintiff had not satisfied Rule 9(b)

because he had failed to "specify the time of submission [of any false claim] with

particularity." 198 F.R.D. at 564. In *Clausen I*, the relator simply stated that the

alleged fraud took place over nearly a decade. *Id.* The relator also gave a few specific

dates upon which allegedly improper procedures were performed, but failed to provide

any dates on which "the allegedly false claims were submitted." *Id.*

In this case, the relator is even more vague. Indeed, he does not provide a single

---

[2] Moreover, the relator incorrectly claims that the collective Resurgens Defendants signed a contract with the "Defendant Anesthesiologists." This conveniently ignores the fact that the contract, which speaks for itself, was between <u>only</u> The Resurgens

specific date, either for the performance of an allegedly improper procedure or for the submission of an alleged false claim. Moreover, the only dates mentioned in the Second Amended Complaint confuse the issue, rather than clarify it. The Second Amended Complaint alternately describes the relevant time period as sometime between 1995 and 1997 (Second Amended Complaint, ¶ 68), or as beginning in 1993. (Second Amended Complaint, ¶ 48). Due to the Second Amended Complaint's internal inconsistency and lack of specificity, it is impossible for the Resurgens Defendants to know the time period at issue, much less which specific submissions are claimed to be fraudulent. Under *Clausen I*, this form of pleading is clearly inadequate, with the result that the Second Amended Complaint fails to satisfy the requirements of Rule 9(b).

**B.      Relator's Claims Based on Conspiracy, the AKA and the STARK Act Must Fail.**

In apparent recognition of the fact that he is unable to plead fraud with the requisite degree of specificity, the relator resorts to sleight of hand in order to create claims against the Resurgens Defendants where none exist. Specifically, he attempts to assert claims of a general conspiracy, a claim under a criminal statute, and a claim under an inapplicable statute (the STARK Act), in the apparent, but misguided, hope that this Court will uphold claims that can most charitably be characterized as requests for changes in existing law.

Center, Inc., and PSA and PSPM. (Second Amended Complaint, Exhibits 3, 6 and 7).

15

There are numerous reasons why this tactic must fail: (1) the relator lacks standing to bring these claims; (2) the relator fails to plead the FCA conspiracy statute; (3) the relator fails to satisfy the requirements of Rule 9(b), which also apply to conspiracy allegations; (4) the conspiracy claims are time-barred; and (5) the AKA and STARK Act are inapplicable to the civil issues in this case.

        1.      The Relator Lacks Standing to Bring Ancillary, Non-FCA Claims.

The remainder of the Second Amended Complaint raises issues that are ancillary to the FCA, including claims for conspiracy to defraud, violations of the AKA, and violations of the STARK Act. As is discussed fully below, the relator lacks standing to bring such claims.

As a threshold matter, it is clear that the FCA does give the relator the right to bring a civil action under that statute on the behalf of the government, even where, as here, the government has not intervened in the action. 31 U.S.C. §§ 3070(b)(1) and (4); *see United States ex rel. Phillips v. Comprehensive Community Dev. Corp.*, 152 F. Supp. 2d 443, 451 (S.D.N.Y. 2001). However, as several courts have recognized, this *qui tam* provision does not permit the relator to bring claims for common law fraud or under other statutes which do not contain independent *qui tam* provisions where he has suffered no injury in fact. *Phillips,* 152 F. Supp. 2d at 452; *see also United States v. Eastman Kodak Co.*, 98 F. Supp. 2d 141, 149 (D. Mass. 2000); *United States ex rel. Long v. SCS Bus. & Tech. Inst.*, 999 F. Supp. 78, 92 (D.D.C. 1998), *rev'd on other*

grounds, 172 F.3d 870 (D.C. Cir. 1999); *United States ex rel. Grant v. Rush-Presbyterian/St. Luke's Med. Ctr.*, 2001 WL 40807, * 6 (N.D. Ill. Jan. 16 2001); *United States ex rel. Mayman v. Martin Marietta Corp.*, 894 F. Supp. 2d 218, 225-26 (D.Md. 1995); John T. Boese, *Civil False Claims and Qui Tam Actions*, § 4.01[B], Aspen Publishers, 2nd Ed. (2004).

Here, the relator attempts to do precisely what the cases forbid. First, with respect to the relator's count for conspiracy to defraud, paragraphs 79, 81 and 82 allege merely common law claims.[3] Because the relator has not alleged any personal injury in fact caused by the common law claims, he lacks standing to bring them. *Phillips,* 152 F. Supp. 2d at 452.

Second, it is also clear that the relator cannot possibly have standing to bring a claim under the AKA, because the section he has relied upon is a criminal statute with no corresponding civil right of action. 42 U.S.C. §1320a-7b(b), (Second Amended Complaint, ¶ 20). It is fairly obvious that no one, not even the government, would have standing to bring a criminal claim in a civil action. Finally, even if the STARK Act were applicable to this case, and, as discussed below, it clearly is not, the relator has not alleged any personal injury in fact under that act, and the act does not contain an

---

[3] Paragraph 81 alleges a conspiracy to obtain "money, kickbacks and patient referrals," apparently, in a reference to the AKA. The AKA itself, however, is a criminal statute

independent *qui tam* provision allowing for the assignment of such a claim.  Thus, the

relator lacks standing to bring the non-FCA claims and they must be dismissed.

      2.   <u>The Relator's Claims for Conspiracy to Defraud Under the FCA</u>
<u>Must Also Be Dismissed.</u>

In addition to pleading improper claims that are ancillary to the FCA, the relator

also apparently attempts, in paragraph 80 of the Amended Complaint, to assert a claim

for conspiracy to defraud under the FCA itself.  Although the relator could have

standing to bring such a claim, he has not properly pled the claim, with the result that

this claim must also be dismissed.

      a.   The Amended Complaint is devoid of any mention of the
conspiracy statute.

In the Amended Complaint, the relator cites only 31 U.S.C §§ 3729(a)(1)and (2).

(Second Amended Complaint, ¶¶ 17 and 18).  However, a plain reading of both

sections shows that contrary to the relator's assertions, they do not prohibit conspiring

in any way.  Rather, the act of conspiracy is prohibited by a separate section of the

statute, 31 U.S.C. § 3729(a)(3), a section that is conspicuously absent from the relator's

Second Amended Complaint.  This omission fails to give the Resurgens Defendants

proper notice of the actual allegations against which they must defend.  Thus, the

---

and does not contain a civil fraud provision.  Thus, this is apparently also a common
law claim.

relator has not properly pled any FCA claims based on conspiracy and Count II of his

Second Amended Complaint should be dismissed.

> b.    The Second Amended Complaint does not allege that any
>        Resurgens Defendant conspired to submit false claims.

Even if the Court views the relator's Second Amended Complaint as stating a

valid claim of conspiracy under the FCA, and it clearly should not for the reasons

discussed above, that claim must still be dismissed because it lacks the requisite

elements to allege a conspiracy.

The general principles of civil conspiracy apply to conspiracy claims under §

3729(a)(3) of the FCA. *See, e.g., United States ex rel. Durcholz v. FKW, Inc.*, 189 F.3d

542, 545 (7th Cir. 1999); *United States ex rel. Phillips v. Pediatric Services of America,

Inc.*, 142 F. Supp. 2d 717, 733 (W.D.N.C. 2001).  The claims, at a minimum, must

allege the existence of an agreement to defraud.  Conclusory allegations of a conspiracy

to submit false claims are insufficient to sustain a claim under the FCA. *Phillips*, 142

F. Supp. 2d at 733; *United States ex rel. Amin v. George Washington University*, 26 F.

Supp. 2d 162, 164-65 (D.D.C. 1998); *United States ex rel. Stinson v. Provident Life*,

721 F. Supp. 1247, 1259 (S.D. Fla. 1989) ("The essence of a conspiracy claim under

the [False Claims] Act is an agreement between two or more people to commit fraud . .

. Stinson's complaint is devoid of any allegations of an agreement and thus fails to state

a claim under section 3729(a)(3)"); *see also Center Cadillac*, 808 F. Supp. at 230.

The Second Amended Complaint here must fail because it does not allege that the Resurgens Defendants entered into an agreement with the alleged co-conspirators to defraud the government.  The relator fails to plead anything that comes close to demonstrating:  a) that any Resurgens Defendant had an illegal agreement to defraud with any of the other named defendants; b) that any Resurgens Defendants knowingly entered into a conspiracy to defraud; and/or c) any example of what any individual participant did to further the objectives of the alleged conspiracy.

If any of the Resurgens Defendants is to be accused of having participated in a conspiracy, it is, at a minimum, entitled to know the specifics relating to its alleged illegal agreement. *See, e.g., Amin*, 26 F. Supp. 2d at 165; *Roberts v. Heim*, 670 F. Supp. 1466, 1484 (N.D. Cal. 1987), *rev'd in part on other grounds*, 857 F.2d 646 (9th Cir. 1988) (to state a claim for conspiracy, a plaintiff must "provide as much detail as possible about the nature of the conspiracy, what each defendant did in furtherance, and how and when each defendant agreed to join the conspiracy").  Because the claims against the Resurgens Defendants are conclusory and provide no meaningful detail relating to any allegedly illegal agreement, they are insufficient and should be dismissed. *See Schiffels v. Kemper Fin. Serv., Inc.*, 978 F.2d 344, 352 (7th Cir. 1992) (affirming dismissal of a RICO conspiracy claim against defendant merely named and identified, and holding that "[t]here is nothing in the complaint from which we can infer [the defendant's] role in the alleged conspiracy, or whether he even knew about

20

(much less agreed to help further) [the] scheme").

       c.    The conspiracy allegations are also barred by the statute of limitations.

Finally, even if the Court were to conclude that the FCA conspiracy allegations were well pled, the conspiracy claim must still fail because it is untimely. The FCA requires that a claim "not be brought – (1) more than six years after the date on which the violation of Section 3729 is committed . . ." 31 U.S.C. § 3731(b)(1). However, under Section 3729(a)(3), the only section of the FCA applicable to conspiracy allegations, the "violation" is the formation of the conspiracy itself. *See Blusal Meats, Inc. v. United States*, 638 F. Supp. 824, 828 (S.D.N.Y. 1986), *aff'd*, 817 F.2d 1007 (2nd Cir. 1987); *United States v. Cripps,* 451 F. Supp. 598, 601 (E.D. Mich. 1978); *United States v. Kates,* 419 F. Supp. 846, 852 (E.D. Pa. 1976) ("there is no requirement [in the FCA conspiracy provision] of proof that any false or fraudulent . . . claims were actually submitted to or paid by the government. Thus, . . . the False Claims Act proscribes the conspiracy itself, regardless of whether or not it was ever effectuated . . .") (footnote omitted); *United States v. Ben Grunstein & Sons Co.*, 127 F. Supp. 907, 911-12 (D.N.J. 1955).

When considering this issue, courts have uniformly held that the statute of limitations begins to run on the date that the conspiratorial agreement was made. *See Blusal Meats*, 638 F. Supp. at 829 ("under Section 3729(a)(3), the act which begins the

21

running of the limitations period is the formation of the conspiracy"); *see also United States ex rel. Johnson v. Shell Oil Co.,* Civ. No. 9:96 CV 66 (E.D. Tex. March 16, 2000) (dismissing conspiracy claims where alleged conspiracy was formed more than six years prior to the filing of suit).  Significantly, the rule used in criminal cases that the limitations period is tolled until the commission of the last overt act is not applicable in civil cases brought under the FCA. *Blusal Meats*, 638 F. Supp. at 830 ("since the last overt act rule is not applicable to this civil conspiracy action under Section 3729(a)(3), the Government's claims based upon the formation of conspiracies more than six years before its complaint was filed are time barred.").

Although the Second Amended Complaint fails to identify the specific participants in any alleged conspiracy, it is clear that, regardless of who the participants may have been, any alleged conspiracy relating in any way to the Resurgens Defendants would have been entered into in 1993, far more than six years before the filing of the initial Complaint in 2001.  Specifically, paragraph 48 of the Second Amended Complaint discusses an agreement between "Defendant Anesthesiologists and Defendant Resurgens," which is an agreement for services.  (Second Amended Complaint, Exhibit 3).  This is the only agreement between any Resurgens Defendant and any of the other parties identified in the Second Amended Complaint which the relator contends created a "conspiracy."  This agreement, which is attached to the Second Amended Complaint, states on its face that it was entered into on April 5, 1993,

22

which is almost eight years before the initial Complaint was filed. *Id.* Because the relator's reliance upon an alleged conspiracy that was formed more than six years prior to the filing of the initial Complaint is outside of the limitations provision of the FCA for a conspiracy claim, the relator's claim must fail.

      3.    <u>Even if He Had Standing to Bring them, the Relator's Claims Based on the AKA Must Also Fail.</u>

As noted above, the section of the AKA cited in the Second Amended Complaint, 42 U.S.C. §1320a-7b(b), is a criminal statute and does not contain any provisions allowing for a private right to bring a civil action. If, however, the relator is claiming that an alleged violation of the AKA is sufficient to establish a fraud claim under the FCA, his claims again must fail for several compelling reasons.

First, there is no decision in this circuit which allows an alleged violation of the AKA to be the basis for a FCA claim, although binding precedent (*Clausen II*) suggests that such a use would <u>not</u> be permitted. *See* 290 F.3d at n. 4 (declaring decision of AKA issues unnecessary because they were not implicated by the FCA issues on appeal). Further, such a use has been hotly contested in other jurisdictions. *See* John T. Boese and Beth C. McClain, *Why Thompson is Wrong: Misuse of the False Claims Act to Enforce the Anti-Kickback Act*, 51 Ala. L. Rev. 1 (1999). Next, even if this Court were to find that the AKA supplies a proper basis for an FCA allegation, the claims must still be dismissed because they fail to satisfy the requirements of Rule 9(b).

23

Here, the relator makes the wholly unsupported assertion that the 1993 services agreement was, in some way he never specifies, improper. However, the relator's pleading is devoid of any specific allegations regarding the impropriety of any agreement between any Resurgens Defendant and any other defendant, with the result that the AKA allegations "fail[] to provide defendants with notice of what was unreasonable. . ." *United States ex rel. Obert-Hong v. Advocate Health Care*, 211 F. Supp. 2d 1045, 1049 (N.D. Ill. 2002). Because "[p]ermitting relator to make bald allegations of unreasonableness, without any details demonstrating how or why, would defeat Rule 9(b)'s purposes," the AKA claim is deficient and should be dismissed. *Id.*

The relator has also failed to specify a single kickback or illegal referral, any individual doctor who would have made such a referral, the date and time of any such referral, or any other specific information that would allow the Resurgens Defendants to respond to such an allegation. As noted above, such a failure to provide specific allegations flies in the face of the requirements of Rule 9(b). *See Clausen I* and *Clausen II, supra.* Thus, all claims under the AKA must fail.

    4.    Relator's STARK Act Claim Must Also Fail.

Again, even if there were no issue of standing, the relator's claim under the STARK Act would still be deficient because the relator has failed to plead the requisite elements of such a claim. The STARK Act applies only to the prohibition of referrals regarding "designated health services," which include:

24

> clinical laboratory services; physical therapy services; occupational therapy services; radiology or other diagnostic services; radiation therapy services; durable medical equipment; parenteral and enteral nutrients, equipment, and supplies; prosthetics, orthotics, and prosthetic devices; home health services; outpatient prescription drugs; and inpatient and outpatient hospital services.

42 U.S.C. § 1395nn(h)(6) (1994). Also, prior to 1994, the STARK Act applied only to referrals for "the furnishing of clinical laboratory services." 42 U.S.C. 1395nn (1993).

The Second Amended Complaint alleges only that the STARK Act violations resulted from referrals for anesthesia and pain management, yet those services are not included in the STARK Act prohibitions. *See* 42 U.S.C. § 1395nn(h)(6). Nowhere does the Second Amended Complaint even suggest that there were referrals by the Resurgens Defendants of a type contemplated by STARK's prohibitions. Thus, Plaintiff has failed to plead a viable cause of action under the STARK Act.

## III.   CONCLUSION

For the foregoing reasons, the Resurgens Defendants request that this Court grant their Motion to Dismiss, with prejudice, in its entirety.

Respectfully submitted, this 14th day of May, 2004.

VAUGHAN & MURPHY
260 Peachtree Street, NW
Suite 1600
Atlanta, GA 30303
(404) 577-6550 (Phone)
(404) 577-0060 (Facsimile)

Charles C. Murphy, Jr.
Georgia Bar No. 530062
Ellen G. Schlossberg
Georgia Bar No. 629387
Lara Cullinane-Smith
Georgia Bar No. 200515

25

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULES

Pursuant to LR 7.1D, the undersigned counsel hereby certifies that the foregoing **BRIEF IN SUPPORT OF MOTION TO DISMISS** complies with the font and point selections approved by the Court in LR 5.1B.  The foregoing pleading was prepared on a computer using the Times New Roman 14 font.

Respectfully submitted, this ___ day of May, 2004.


_____
Lara Cullinane-Smith
Georgia Bar No. 200515

## CERTIFICATE OF SERVICE

This is to certify that I have this day served the foregoing **BRIEF IN SUPPORT**

**OF MOTION TO DISMISS** upon the parties by causing copies of same to be

deposited into First Class Mail, with postage prepaid, properly addressed to:

> Marlan B. Wilbanks
> Harmon, Smith, Bridges & Wilbanks LLP
> 1795 Peachtree Road, N.E.
> Suite 350
> Atlanta, Georgia 30309-2339
>
> Shannon T. Klinger
> George A. Koenig
> Alston & Bird LLP
> One Atlantic Center
> 1201 West Peachtree Street
> Atlanta, Georgia 30309
>
> Paul J. Quiner
> 2840 Mt. Wilkinson Parkway
> Atlanta, Georgia 30339

Respectfully submitted, this ___ day of May, 2004.

> _____
> Lara Cullinane-Smith
> Georgia Bar No. 200515

27